UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAAHDI COLEMAN,

           Petitioner,

    v.

RICK HILL,

           Respondent.

No.  2:  14-cv-0857 MCE KJN P

FINDINGS & RECOMMENDATIONS

I.  Introduction

Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2011 prison disciplinary conviction for distributing a controlled substance in violation of California Code of Regulations Title 15, § 3016(d).  Petitioner was assessed a 180 days credit loss.

Petitioner raises the following claims challenging the prison disciplinary conviction:  1) denial of right to call witnesses; 2) the hearing officer was biased; 3) denial of right to an investigative employee; 4) the hearing officer wrongly denied petitioner's request to postpone the hearing; and 5) the hearing officer wrongly permitted staff witnesses to remain in the hearing room.

After carefully considering the record, the undersigned recommends that the petition be denied.

1

II. <u>Standards for a Writ of Habeas Corpus</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), an application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted).  "A state court's

2

1   determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

2   jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,

3   131 S. Ct. 770, 786 (2011).

4         The court looks to the last reasoned state court decision as the basis for the state court

5   judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision,

6   "and the state court has denied relief, it may be presumed that the state court adjudicated the

7   claim on the merits in the absence of any indication or state-law procedural principles to the

8   contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing

9   that "there is reason to think some other explanation for the state court's decision is more likely."

10  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

11        "When a state court rejects a federal claim without expressly addressing that claim, a

12  federal habeas court must presume that the federal claim was adjudicated on the merits – but that

13  presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.

14  1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a

15  federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de

16  novo review of the claim. Id., at 1097.

17        Where the state court reaches a decision on the merits but provides no reasoning to

18  support its conclusion, the federal court conducts an independent review of the record.

19  "Independent review of the record is not de novo review of the constitutional issue, but rather, the

20  only method by which we can determine whether a silent state court decision is objectively

21  unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned

22  decision is available, the habeas petitioner has the burden of "showing there was no reasonable

23  basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must

24  determine what arguments or theories supported or, . . . could have supported, the state court's

25  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

26  arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at

27  786.

28  ////

3

III.  Background

Although petitioner does not raise a claim alleging insufficient evidence to support his disciplinary conviction, the undersigned herein sets forth the relevant portions of the disciplinary report to put petitioner's claims in context.

The disciplinary report contains the following statement by reporting Officer Rhoads:

> On Saturday, August 14, 2010, at approximately 1840 hours, while performing my duties as a Main yard Officer #3, post #361161, I was standing on the Main Yard when I observed Inmate COLEMAN, S. (BLA), followed and escorted by Officer S. Beem. I witnessed an unidentified Black inmate approach Inmate COLEMAN from the adjacent tables and shake hands with him. After inmate COLEMAN shook hands, I noticed Inmate COLEMAN still had a clenched fist, which based on that observation led me to believe that Inmate COLEMAN was holding something inside his clenched fist. Inmate COLEMAN put both of his hands back on the garbage container and continued pushing the cart along the basketball court towards the yard shack. I approached Inmate COLEMAN from my position on the other side of the basketball court, and when I was within speaking distance I ordered Inmate COLEMAN to stop and show me his hands. Inmate COLEMAN was reluctant in doing so and acted as if he did not hear my order. I ordered Inmate COLEMAN to step away from the cart and place his hands along the railing of the yard shack where I placed Inmate COLEMAN in hand cuffs. I asked Officer Beem to search the cart that Inmate COLEMAN was pushing. I told Officer Beem I believed inmate COLEMAN had possibly dropped something into the cart that he had earlier in his hand and was attempting to conceal. I took Inmate COLEMAN inside of the yard shack where I performed a clothed body search on him with negative results. Officer E. Mejia took Inmate COLEMAN and escorted him from the yard shack to the FSP Custody Complex. After conducting the search of the cart Officer Beem entered the yard shack with what appeared to be a small ball-shaped package of latex material from the package. I discovered a second layer of latex material. Then after removing the second layer of latex material from the package, I discovered a third inner layer of latex material. After removing the third layer of latex material, I discovered the package contained five (5) individually wrapped bindles of an unknown white, crystal-like substance. Officer Beem took the five (5) individual bindles, latex packing material and took it to the FSP Custody Complex to be processed into evidence. That concluded my involvement in this incident.

(ECF No 12-2 at 2.)

The disciplinary report states that the bindles tested positive for methamphetamine. (Id. at 1.)

////

4

The disciplinary report also contains the responses by Officers Beem and Rhoads to questions submitted by petitioner, asked on his behalf by Senior Hearing Officer ("SHO") Darnell, who conducted the disciplinary hearing.  The questions asked of Officer Beem are set forth herein:

> Q1) Did you observe contraband on Inmate COLEMAN?
>
> A1)  No.
>
> Q2) Did you observe Inmate COLEMAN drop anything in the trash cart?
>
> A2) No.
>
> Q3) What did Officer Rhoads tell you after he handcuffed Inmate COLEMAN?
>
> A3) He said Inmate COLEMAN threw something over the edge of the cart, that's where I found the drugs.
>
> Q4) When did Rhoads ask you to search the trash cart?
>
> A4) Simultaneously to the search of Inmate COLEMAN.
>
> Q5) When Officer asked you to search the trash cart, were his exact words, "I think he put something in his mouth.  I'm not sure, check the garbage cart on the top, he might have dropped something."
>
> A5) **The Senior Hearing Officer determined that this question is a "Leading Question," therefore, he did not present this question to Officer Beem.**
>
> Q6) Where did you find the contraband in the cart?
>
> A6) On garbage bag at the bottom of the cart.
>
> Q7) Did you observe Inmate COLEMAN shake anyone's hand?
>
> A7) No.
>
> Q8) Did you see Inmate COLEMAN speak to anyone?
>
> A8) No.
>
> Q9) Can you repeat any conversation the two inmates might have had?
>
> A9) **The Senior Hearing Officer notes that the answer to this question was Question 8.   Officer Beem did not see Inmate COLEMAN talk to anyone.**
>
> Q10) Did you know who initiated the contact with each other, as

5

1     who called out to who or who walked over to who?

2     A10) **The Senior Hearing Officer notes that the answer to this question was answer[ed] in Question 8.  Officer Beem did not see Inmate COLEMAN talk to anyone.**

3

4     Q11) Once you found the contraband did you stop searching the cart?

5

6     A11) I searched the whole cart and found no other contraband.  I found the small bag of dope and figured that was what was dropped.

7

8     (Id. at 4.)

9     The questions asked of Officer Rhoads are set forth herein:

10     Q1) Is your report accurate?

11     A1) Yes.

12     Q2) Did you see anything in the hands of either inmate before they shook hands?

13

14     A2) I watched Inmate COLEMAN push the cart without a clenched fist.  After the handshake Inmate COLEMAN had a clenched fist.

15     Q3) Did you follow the unidentified inmate after the hand shake?

16     A3) No, my attention was on Inmate COLEMAN.

17     Q4) Did you or any other Officer make contact with the unidentified inmate?

18

19     A4) No, I did not.  I am not aware of any other officer.

20     Q5) Was the unidentified inmate ever searched?

21     A5) Not to my knowledge, just Inmate COLEMAN.

22     Q6) In the report you indicated that you believe the unidentified black inmate received or delivered something to Inmate COLEMAN.  Why wasn't the unidentified inmate searched for definitive evidence?

23

24     A6) **The Senior Hearing Officer determined that this is a leading question, therefore, the answer would be a speculation on Officer Rhoads part if he answer.**

25

26     Q7) Is there any evidence that the unidentified inmate gave Inmate COLEMAN any contraband?

27

28     A7) I saw the physical contact occur where the inmates' hands made contact and Inmate COLEMAN left with a closed fist.

Q8) Is there evidence that Inmate COLEMAN gave to the unidentified man anything?

A8) No.

Q9) Is the part of your report that says "Inmate COLEMAN passed or received what appeared to be contraband," just speculation unsupported by evidence?

A9) **The Senior Hearing Officer deemed that this question was answered in the report.**

Q10) When you made contact with Inmate COLEMAN was he facing you?

A10) **The Senior Hearing Officer determined that this question is not clear, therefore, the Senior Hearing Officer asked Inmate COLEMAN to rephrase the question.   Inmate COLEMAN declined to rephrase the question.**

Q11) Did you ask Inmate COLEMAN to open his mouth?

A11) Yes I did.

Q12) Did you tell other staff you think that he put something in his mouth?

A12) Yes I did.

Q13) When your search of Inmate COLEMAN came up negative, didn't you tell the other officers, "I think he swallowed something."

A13) **The Senior Hearing Officer determined that this question was answered in Question 12.**

Q14) What did you tell Officer Beem?

A14) Search the cart.

Q15) Could you see if Inmate COLEMAN dropped something into the cart?

A15) From where I was walking I could not see inside the cart.  I saw his hand go to the top of the cart.  Inmate COLEMAN turned to me and went to his mouth.  Like it shows in the video.

Q16) Did you see the contraband in Inmate COLEMAN's hand?

A16) I never saw what was in COLEMAN's hand.

Q17) When you moved Inmate COLEMAN into the Yard Shack did you tell the other officers who were present, "Close the door.  I think he put something in his mouth"?

A17) **The Senior Hearing Officer has determined that this**

7

1    **question has already been answered.**

2    (Id. at 4-5.)

3        The disciplinary report states that SHO Darnell found petitioner guilty based on the

4    contents of Officer Rhoads's report, Officer Beem's report, the Controlled Analysis Report from

5    the Sacramento County District Attorney's Laboratory of Forensic Services confirming the tested

6    samples were methamphetamine, and the video.  (Id. at 7.)  Regarding the video, the report states,

7            The Senior Hearing Officer reviewed the video surveillance footage
        in this incident and has determined that Inmate COLEMAN
8        pass[ed] or receive[d] the suspected contraband on the Main Yard
        from an unidentified inmate while pushing a trash cart across the
9        basketball court.  Furthermore, the recorded footage shows inmate
        COLEMAN drop an object from his right hand into the trash cart.

10

11   (Id. at 7.)

12       On March 9, 2012, petitioner filed a habeas corpus petition in the Sacramento County

13   Superior Court raising the claims raised in the instant action.  (See ECF No. 12-1 at 6.)  On May

14   8, 2012, the Superior Court denied this petition in a reasoned decision.  (Id. at 2-4.)

15       Petitioner then filed a habeas corpus petition in the California Court of Appeal raising the

16   same claims as those raised in the Superior Court.  (ECF No. 12-6 at 2.)  The California Court of

17   Appeal issued an order to show cause returnable to the Superior Court.  (Id.)  The Superior Court

18   then conducted an evidentiary hearing.  (Id.)  The transcript from this hearing is attached to

19   respondent's answer.  (Id. at 16-73; ECF No. 12-7 at 1-10.)  At this hearing, petitioner, inmate

20   Robinson, SHO Darnell and Officer Stilwell testified.  (ECF No. 12-6 at 16.)

21       Following the evidentiary hearing, the Superior Court issued a reasoned decision again

22   denying petitioner's habeas corpus petition.  (Id. at 2-13.)  Petitioner then filed a petition for

23   review in the California Court of Appeal.  (ECF No. 12-18 at 4.)  The California Court of Appeal

24   denied the petition for review without comment or citation.  (Id. at 2.)  Petitioner filed a habeas

25   corpus petition in the California Supreme Court.  (ECF No. 12-19 at 2.)  The parties do not

26   dispute that the California Supreme Court denied the petition without comment or citation.

27       The undersigned gives AEDPA deference to the Superior Court's decision denying

28   petitioner's habeas petition after the evidentiary hearing, as this is the last reasoned state court

8

1 | opinion.

2 | IV.  Legal Standard

3 |       It is well established that inmates subjected to disciplinary action are entitled to certain

4 | procedural protections under the Due Process Clause, but are not entitled to the full panoply of

5 | rights afforded to criminal defendants.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also

6 | Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).

7 |       An inmate is entitled to no less than 24 hours advance written notice of the charge against

8 | him as well as a written statement of the evidence relied upon by prison officials and the reasons

9 | for any disciplinary action taken.  See Wolff, 418 U.S. at 563.  An inmate also has a right to a

10 | hearing at which he may "call witnesses and present documentary evidence in his defense when

11 | permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

12 | Id. at 566.  See also Ponte v. Real, 471 U.S. 491, 495 (1985).  The disciplinary hearing must be

13 | conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."

14 | Wolff, 418 U.S. at 571.

15 | V.  Discussion

16 |       A.  Investigative Employee

17 |       Petitioner alleges that his assigned investigative employee, Officer Stilwell, failed to

18 | perform his duties.  The undersigned herein summarizes the relevant testimony regarding this

19 | claim from the evidentiary hearing.

20 |       *Petitioner's Testimony*

21 |       Petitioner testified that after he was charged with possession of drugs, he was placed in

22 | administrative segregation ("ad seg").  (ECF No. 12-6 at 20.)  Following his placement in ad seg,

23 | petitioner was assigned an investigative employee, Office Stilwell.  (Id.)  Petitioner requested that

24 | his disciplinary hearing be postponed until the Sacramento County District Attorney made a

25 | decision whether to file criminal charges against him for drug possession.  (Id.)

26 |       Petitioner testified that when he met with Officer Stilwell on September 6, 2010, he asked

27 | Officer Stilwell to interview the officer who wrote the disciplinary report, i.e., Officer Rhoads,

28 | and the other officer present at the time, i.e., Officer Beem.  (Id.)  Petitioner also testified that he

1   asked Officer Stilwell to identify the inmate porters who were working and the black inmate who

2   approached him, i.e., the inmate who shook his hand.  (<u>Id.</u>)  Petitioner also asked that he be

3   allowed to view the videotape so that he could identify other witnesses.  (<u>Id.</u>)

4       Petitioner testified that he had no contact with Officer Stilwell from September 6, 2010, to

5   November 18, 2010.  (<u>Id.</u> at 21.)  Petitioner was released to the general population on November

6   18, 2010.  (<u>Id.</u>)  After that date, petitioner saw Officer Stilwell three or four times a week.  (<u>Id.</u>)

7   During those times, petitioner asked Officer Stilwell if he could view the videotape.  (<u>Id.</u>)  Officer

8   Stilwell told him that he would schedule a time for petitioner to view the tape.  (<u>Id.</u>)  Petitioner

9   testified that when he saw Officer Stilwell on these occasions, Officer Stilwell did not tell him

10  that he no longer qualified for an investigative employee because he was no longer in ad seg.  (<u>Id.</u>

11  at 23.)  Petitioner testified that he thought Officer Stilwell was still conducting the investigation.

12  (<u>Id.</u>)  Petitioner viewed the videotape on January 25, 2011.  (<u>Id.</u> at 22.)

13      On January 3, 2011, petitioner met with Officer Stilwell.  (<u>Id.</u>)  At this meeting, Officer

14  Stilwell told petitioner that the district attorney had decided not to press charges and that

15  petitioner no longer qualified for an investigative employee because he was no longer housed in

16  ad seg.  (<u>Id.</u>)

17      *Officer Stilwell's Testimony*

18      Correctional Officer Stilwell's testified that he was assigned to be petitioner's

19  investigative employee for the disciplinary hearing on approximately September 6, 2010.  (<u>Id.</u> at

20  65.)  Officer Stilwell testified that petitioner was entitled to an investigative employee because

21  petitioner was housed in ad seg and did not have access to witnesses.  (<u>Id.</u>)  Officer Stilwell

22  testified that when he is assigned as an investigative employee to an inmate in ad seg, he advises

23  them that may wish to postpone their disciplinary hearing while the district attorney decides

24  whether to file charges.  (<u>Id.</u> at 65-66.)  This possible postponement is because anything an

25  inmate says in a disciplinary hearing prior to the district attorney's decision regarding whether to

26  file charge can be used against the inmate in court proceedings.  (<u>Id.</u> at 66.)  Officer Stilwell

27  testified that he discussed these options with petitioner, and that petitioner chose to postpone his

28  disciplinary hearing pending a decision by the district attorney.  (<u>Id.</u>)  Officer Stillwell testified

1    that while the district attorney reviewed the charges against petitioner, his investigation on

2    petitioner's behalf did not go forward to protect petitioner's interests.  (Id. at 67.)

3          Officer Stilwell testified that when he met with petitioner on September 6, 2010, petitioner

4    elected to postpone his disciplinary hearing.  (Id. at 68.)  At that time, Officer Stilwell asked

5    petitioner if he had any staff witnesses, and petitioner said he wanted to call Officers Beem and

6    Rhoads.  (Id.)  The only inmate witness petitioner asked Officer Stilwell to locate was the

7    unidentified inmate who shook his hand.  (Id.)  Officer Stilwell testified that petitioner gave him a

8    list of questions to ask prison staff.  (Id.)

9          Officer Stilwell testified that on January 3, 2011, the district attorney made the decision

10    not to prosecute petitioner.  (Id. at 70.)  Officer Stilwell notified petitioner of the district

11    attorney's decision on that day.  (Id.)  At that time, petitioner was out of ad seg and housed in the

12    general population.  (Id.)  Officer Stilwell testified that because petitioner was no longer housed

13    in ad seg, he did not meet the criteria for an investigative employee, and he could collect his own

14    witnesses.  (Id.)  Officer Stilwell testified that he asked petitioner if he had any other witnesses he

15    wanted to call other than Officers Beem and Rhoads.  (Id.)  Petitioner did not identify any other

16    witnesses. (Id.)

17          *Superior Court Decision*

18          Following the evidentiary hearing, the Superior Court denied this claim for the reasons

19    stated herein:

20                e.  Investigative Employee

21          An investigative employee must be assigned when a serious rules
      violation is charged and the issues are complex, the housing status
22      of the inmate makes it unlikely that he or she can collect and
      present evidence for a defense, and additional information is needed
23      for a fair hearing.   (Title 15, Cal. Code Regs., section
      3315(a)(1)(a).)  The role of an investigative employee is described
24      as follows:

25          "(a)…The  investigative  employee  is  designated  to  gather
      information for the senior hearing officer or disciplinary hearing
26      committee as described in section 3315(d)(1(A).

27          (1) The investigate employee shall:

28          (A) Interview the charged inmate.

11

(B) Gather information.

(C) Question all staff and inmates who may have relevant information.

(D) Screen prospective witnesses.

(E) Submit a written report to the senior hearing officer or disciplinary committee chairperson to include witness statements and a summary of the information collected specific to the violation charged.

(2) A copy of the investigative employee's report shall be provided to the inmate no less than 24 hours before a disciplinary hearing is held.

(3) When an investigative employee provides assistance to an inmate, in lieu of or in addition to that provided by a staff assistant, the investigative employee shall do so as a representative of the official who will conduct the disciplinary hearing rather than as a representative of the inmate.

(4) An investigative employee is not subject to the confidentiality provisions of subsection (b)(2)(A) [concerning staff assistants] and shall not withhold any information received from the inmate." (Title 15, Cal. Code REgs., section 3318.)

****

Petitioner's claim was that his IE, Officer Stilwell, said he would be investigating the incident and that he failed to tell him that he no longer qualified for an investigative employee once he had been released from segregated housing.  He claimed that a due process violation occurred because Officer Stilwell did not advise him that he would not have an investigative employee until the date the DA declined to press charges.

Officer Stilwell testified that he could not remember exactly what he said to petitioner but that his practice was to tell an inmate in segregated housing what the charge was, whether it was a DA referral, when they would qualify for an investigative employee, and that it was their decision on whether to postpone the hearing.

Once a postponement was requested following referral to a district attorney, as an investigative employee, Officer Stilwell would do nothing.  He would collect no evidence because what he collected was not confidential.  If he found anything that worked against petitioner, it could be used against petitioner by the district attorney.  He said he usually would tell an inmate that the next time they would hear from him would be when he got the notice from the DA.

Officer Stilwell did not recall what petitioner had said to him that day exactly, but said he did not request inmate witnesses at that point.  He did not provide a list of questions for inmates, just for the

12

staff witnesses.  Officer Stilwell recalled that the only person petitioner mentioned was the inmate who allegedly passed drugs to him.  Officer Stilwell said it was his custom to document all witness requests.  He did not recall discussing video evidence with petitioner at their initial meeting.

Officer Stilwell repeated that after the meeting with petitioner, he did not ask the officer any of the proposed questions because the answers could have been used against petitioner in court.  The district attorney notified the prison that its office would not pursue charges on January 3, 2011, and Officer Stilwell advised petitioner of this on the same day.  He said he also advised that petitioner did not meet the criteria for an investigative employee because he could seek his own witnesses.  Asked if he asked petitioner whether petitioner wanted more witnesses, Officer Stilwell said petitioner stated only that he wanted questions to be asked of the officers already named.

The regulations confirm that an IE is appointed to assist the hearing officer, not the inmate.  By regulation, what the IE discovers is not confidential.  It works to the inmate's advantage if the IE does nothing on his case while the matter is pending before the district attorney.  Thus, the court finds that Officer Stilwell's explanation of his role was persuasive.  It tracked the status that an IE would have under the regulations, and petitioner would have had no expectation that an investigation was ongoing while he was waiting for the district attorney to decide whether to proceed.  As Officer Stilwell explained, under the regulations any adverse information uncovered in such an investigation would have worked to petitioner's disadvantage.  Petitioner's due process rights were not violated by Officer Stilwell's policy in this regard.

(ECF No. 12-6 at 7-10.)

*Analysis*

The Superior Court found that Officer Stillwell's failure to investigate the charges while the district attorney decided whether to press charges did not violate petitioner's right to due process because any information he discovered had he investigated would not have been confidential.

The Supreme Court has recognized that an investigative officer may be required when "an illiterate inmate is involved ... or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case ...."  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 570 (1974).  Petitioner was initially assigned an investigative employee, pursuant to *state regulations*, because he was housed in ad seg.  However, as discussed above, petitioner had no *constitutional right* to an investigative employee

13

1  simply because he was housed in ad seg.  Pursuant to <u>Wolff</u>, petitioner was not otherwise entitled

2  to an investigative employee because he was not illiterate and the charges against him were not

3  particularly complex.  For this reason, the undersigned finds that Officer Stilwell's failure to

4  conduct an investigation on petitioner's behalf while the district attorney reviewed the charges did

5  not violate petitioner's right to due process because petitioner was not entitled to an investigative

6  employee.

7         Petitioner's real claim appears to be that Officer Stilwell failed to inform him that he

8  would not investigate the charges while the District Attorney's Office conducted its review, and

9  failed to inform him that he no longer qualified for an investigative employee when he was

10  released from ad seg on November 18, 2011.  Petitioner appears to allege that had he known that

11  Officer Stilwell was not investigating the charges, petitioner would have conducted his own

12  investigation.  These allegations are relevant to petitioner's claim that he was denied a

13  continuance in order to investigate witnesses.  Accordingly, the undersigned addresses these

14  allegations in the section below addressing petitioner's claim that he was denied a continuance.

15         For the reasons discussed above, the denial of petitioner's claim alleging that Officer

16  Stilwell did not perform his duties as an investigative officer was not an unreasonable application

17  of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

18         B.  <u>Unbiased Hearing Officer</u>

19         Petitioner alleges that hearing SHO Darnell was biased against him because petitioner had

20  named SHO Darnell as a defendant in a civil suit.  The undersigned herein summarizes the

21  relevant testimony regarding this claim from the evidentiary hearing.

22         *Petitioner's Testimony*

23         Petitioner testified that the first thing he did at the disciplinary hearing was tell SHO

24  Darnell that he was a defendant in one of petitioner's pending civil cases.  (ECF No. 12-6 at 27.)

25  Petitioner testified that he asked SHO Darnell if it would be possible to have someone else

26  conduct the hearing.  (<u>Id.</u> at 27-28.)  Petitioner testified that he showed SHO Darnell a copy of the

27  proof of service from his lawsuit as evidence that SHO Darnell was named as a defendant in a

28  civil case.  (<u>Id.</u> at 28.)  Petitioner testified that SHO Darnell said that he would go forward with

14

1     the hearing.  (Id.)

2          *SHO Darnell's Testimony*

3          At the evidentiary hearing, SHO Darnell testified that during the disciplinary hearing

4     petitioner did not ask to have him, SHO Darnell, disqualified as the hearing officer.  (Id. at 53.)

5     SHO Darnell testified that at the time of the disciplinary hearing, he was not aware of any civil

6     lawsuits involving himself and petitioner.  (Id.)  SHO Darnell also testified that, at the

7     disciplinary hearing, he could not recall petitioner showing him a proof of service regarding a

8     civil action naming him as a defendant.  (Id. at 54.)

9          SHO Darnell testified that after the hearing, petitioner wrote a Form 22 stating that SHO

10    Darnell was aware that he had been served with a subpoena in a civil case filed by petitioner.

11    (Id.)  In response to this form, SHO Darnell informed petitioner that he (SHO Darnell) had not

12    been served with a subpoena.  (Id.)  Petitioner then went to his cell and returned with a piece of

13    paper saying that SHO Darnell was part of a lawsuit.  (Id.)  SHO Darnell testified that he had not

14    been served with any lawsuit involving petitioner.  (Id. at 54-55.)  SHO Darnell then charged

15    petitioner with a prison disciplinary for falsely accusing SHO Darnell of misconduct, based on

16    petitioner's claim that SHO Darnell should not have presided over the disciplinary hearing

17    knowing that petitioner had named him as a defendant in a civil suit.  (Id. at 54.)

18         SHO Darnell testified that it turned out that the litigation coordinator had been served with

19    a lawsuit filed by petitioner naming SHO Darnell as a defendant.  (Id. at 55.)  However, SHO

20    Darnel was not personally served with the lawsuit and had no knowledge of it at the time of the

21    disciplinary hearing.  (Id.)  SHO Darnell testified that the prison disciplinary he filed against

22    petitioner charging him with misconduct was later dismissed because petitioner would not have

23    known whether SHO Darnell was personally served, apparently because the litigation coordinator

24    received service.  (Id. at 57.)

25         *Superior Court Decision*

26         In denying this claim, the Superior Court acknowledged that inmates have a constitutional

27    right to a neutral and detached hearing officer, citing Wolff v. McDonnell.  (ECF No. 12-6 at 5.)

28    The Superior Court denied this claim for the reasons stated herein:

Petitioner alleges that he told Hearing Officer Darnell prior to his hearing that Lt. Darnell had been served with papers naming him as a defendant in a civil lawsuit. Petitioner stated that he showed Lt. Darnell the paperwork showing service. He claimed that for this reason Lt. Darnell was biased against him.

Lt. Darnell testified that he had not made any decision regarding petitioner's guilt or innocence prior to the hearing. He stated that he was unaware of a civil lawsuit prior to the hearing. He explained that the prison's litigation coordinator – not an individual officer – is served with notice of lawsuits like the one petitioner filed. When petitioner raised the issue, Lt. Darnell issued a disciplinary citation to petitioner for making false allegations. Petitioner was subsequently found not guilty of the charges, Lt. Darnell testified, because petitioner would have no way of knowing that service of process at the prison goes to the litigation coordinator. Lt. Darnell also testified that knowing of an unrelated civil lawsuit would not affect his credibility to consider petitioner's disciplinary charge in an unbiased manner.

On this allegation, the facts show that Lt. Darnell has not been served with a civil lawsuit prior to the hearing. Even if he had been served, this lawsuit did not concern the disciplinary infraction. Lt. Darnell testified that he had no preconceived idea about the outcome and that even if he had known about the lawsuit, he would not have been biased against petitioner. The court finds this testimony persuasive and concludes that petitioner's hearing was conducted by a neutral and unbiased hearing officer.

(Id. at 10-11.)

*Analysis*

Under 28 U.S.C. § 2254(e)(1), findings of fact made by the state courts are entitled to a presumption of correctness, which the petitioner has the burden of rebutting by clear and convincing evidence. Here, the Superior Court appears to have found SHO Darnell's testimony that he was unaware of being named as a defendant in a civil suit by petitioner prior to the disciplinary hearing to be credible. In other words, the Superior Court found not credible petitioner's testimony that he told SHO Darnell prior to the hearing that he was named as a defendant in a civil suit. Petitioner has failed to adduce any evidence to rebut the Superior Court's credibility findings regarding whether he told SHO Darnell prior to the disciplinary hearing that SHO Darnell was named as a defendant in a civil suit. See, e.g., Marshall v. Lonberger, 459 U.S. 422, 433-34 (1983) (according presumption of correctness to trial court's conclusion that a witness' evidentiary hearing testimony was not credible; and holding that state

16

1   court's implied finding on credibility also is entitled to presumption of correctness); <u>Edwards v.</u>

2   <u>Lamarque</u>, 475 F.3d 1121, 1126–27 (9th Cir.) (citing <u>Marshall</u> for the proposition that "federal

3   habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been

4   observed by the state trial court, but not by them"), <u>cert. denied</u>, 552 U.S. 1009 (2007);

5   <u>Sophanthavong v. Palmateer</u>, 378 F.3d 859, 867 (9th Cir. 2004) ("B]ecause the state court

6   conducted an evidentiary hearing at which [the petitioner] testified, we are required to defer to the

7   state court's credibility findings."); <u>Powell v. Collins</u>, 332 F.3d 376, 389 (6th Cir. 2003)

8   (presumption of correctness applies to "implicit findings of fact, logically deduced because of the

9   trial court's ability to adjudge the witnesses' demeanor and credibility"); <u>Knaubert v. Goldsmith</u>,

10  791 F.2d 722, 727 (9th Cir.) (per curiam) (applying presumption of correctness to implicit

11  credibility determination), <u>cert. denied</u>, 479 U.S. 867 (1986); <u>see also</u> <u>Cooper v. Brown</u>, 510 F.3d

12  870, 919 (9th Cir. 2007) ("The presumption of correctness applies not only to express findings of

13  fact, but also applies equally to unarticulated findings that are necessary to the state court's

14  conclusions of mixed questions of fact and law.").

15         Accordingly, because SHO Darnell had no knowledge of petitioner's civil suit naming

16  him as a defendant prior to the disciplinary hearing, petitioner's claim that SHO Darnell was

17  biased on these grounds is without merit.  The denial of this claim by the Superior Court was not

18  an unreasonable application of clearly established Supreme Court authority.  Accordingly, this

19  claim should be denied. [1]

20         C. <u>Right to Call Witnesses</u>

21         Petitioner alleges that he had four inmate witnesses present and ready to testify at the

22  January 30, 2011 disciplinary hearing:  inmates Robinson, Fitch, Nunn and Campbell.  (ECF No.

23

24  [1]   The undersigned notes that the Seventh Circuit has held that prison staff are not required to
    recuse themselves from a disciplinary hearing solely because they are a named defendant in a
25  pending lawsuit filed by a petitioner.  "Requiring each staff member who is the subject of a
    separate lawsuit to disqualify [themselves] from sitting in judgment of that inmate would heavily
26  tax the working capacity of the prison staff."  <u>Redding v. Fairman</u>, 717 F.2d 1105, 1113 (7th Cir.
    1983).  "If every named defendant in a prisoners' rights lawsuit must be disqualified from sitting
27  on the [disciplinary] Committee, such a litigation strategy would vest too much control in a
    prisoner to determine the Committee make-up."  <u>Id.</u>
28

17

1 at 14.)  Petitioner alleges that SHO Darnell denied his request to call these witnesses.  Petitioner

also argues that SHO Darnell committed perjury at the evidentiary hearing when he testified that

these four inmates were not present at the disciplinary hearing.  The undersigned summarizes the

relevant testimony from the evidentiary hearing herein.

*Petitioner's Testimony*

At the evidentiary hearing, petitioner testified that his four inmate witnesses went to the

Sergeant's Office and waited outside on a bench facing the office.  (ECF No. 12-6 at 26.)

Petitioner testified that he, petitioner, went directly into the Sergeant's Office when he got there.

(Id. at 26-27.)  Petitioner testified that he was able to obtain the attendance of the four inmate

witnesses by requesting them from his "tier cop."  (Id. at 27.)  Petitioner testified that two of the

inmate witnesses were on his tier, and the other two were apparently porters on his tier.  (Id.)

Petitioner testified that after he went into the Sergeant's Office, he asked to postpone the

hearing so that he could identify additional witnesses.  (Id.)  Petitioner testified that SHO Darnell,

Officer Stilwell, Officer Rhoads and Officer Beem were in the office with him.  (Id.)  Petitioner

testified that SHO Darnell asked petitioner to stand outside so that they could discuss petitioner's

request.  (Id. at 29.)  About 15-20 minutes later, petitioner was brought back into the Sergeant's

Office.  (Id. at 30.)  Petitioner was told that his request to postpone the hearing was denied.  (Id.)

At that point the hearing was moved to a counselor's office, which was approximately 10 feet

away.  (Id.)

Petitioner testified that as they moved to the counselor's office, he told SHO Darnell that

the four inmates sitting on the bench were his witnesses.  (Id. at 34.)  Petitioner testified that after

Officer Rhoads and Officer Beem testified, SHO Darnell asked petitioner how he pled.  (Id. at

35.)  Petitioner testified that he said that he was pleading not guilty and he told SHO Darnell that

he had witnesses, referring to the four inmate witnesses waiting in the hall.  (Id.)  Petitioner

testified, "I believe I told them, told him, because he told me I couldn't have witnesses, that he

was ready to decide…"  (Id.)

////

////

18

1    *Inmate Robinson's Testimony*

2        At the evidentiary hearing, inmate Prentiss Robinson testified that he worked as a porter in

3    petitioner's building.  (Id. at 38.)  Inmate Robinson testified that he waited outside the Sergeant's

4    Office to testify at petitioner's disciplinary hearing.  (Id. at 38-39.)  Inmate Robinson testified that

5    there were three other inmates waiting with him.  (Id. at 38-39.)  He remembered that two of the

6    inmates waiting with him were inmates Fitch and Campbell.  (Id. at 39.)  Inmate Robinson

7    testified that at some point, petitioner and some other correctional officers left the Sergeant's

8    Office.  (Id. at 40.)  Robinson testified that he thought it might have been Officer Beem who left

9    the office with petitioner.  (Id.)  Robinson testified that petitioner was later called back into the

10   Sergeant's Office.  (Id.)  Robinson testified that at some point, Senior Hearing Officer Darnell,

11   petitioner and other correctional officers left the Sergeant's Office and went to a counselor's

12   office. (Id.)  Inmate Robinson testified that when they left, he heard petitioner say to Senior

13   Hearing Officer Darnell, "These are my witnesses."  (Id. at 40-41.)

14       *SHO Darnell's Testimony*

15       At the evidentiary hearing, SHO Darnell testified that at the disciplinary hearing, he asked

16   petitioner if he had any witnesses for the hearing and petitioner said he had not found them.  (Id.

17   at 44-45.)  SHO Darnell testified that if an inmate showed up on the day of a disciplinary hearing

18   requesting a specific witness, his practice would be to tell a disciplinary officer to go get the

19   inmates witness.  (Id. at 48.)  SHO Darnell testified that at no time during the hearing did

20   petitioner indicate to him that he had witnesses ready to testify sitting outside the hearing room.

21   (Id. at 51.)  SHO Darnell testified that it would not have been possible for petitioner to have

22   witnesses sitting outside the waiting room ready to testify without him knowing about it.  (Id. at

23   51-52.)  SHO Darnell testified that if he denied a request for a witness, his custom and practice

24   was to put the reasons he denied the request in his report.  (Id. at 52.)

25       *Officer Stilwell's Testimony*

26       Officer Stilwell testified that he attended petitioner's disciplinary hearing.  (Id.)  Officer

27   Stilwell testified that he stood right outside the office door during the disciplinary hearing,

28   because the office is small.  (ECF No. 12-7 at 1.)  Officer Stilwell testified that he did not notice

1   any inmates waiting to testify outside the hearing room.  (Id. at 2.)  Officer Stilwell testified that

2   he would have known if there were inmates waiting to testify, because he would have arranged to

3   have them sitting on the bench outside.  (Id.)

4         *Availability of Other Inmate Witnesses*

5         At the evidentiary hearing, the lawyer representing petitioner informed the court that

6   inmates Campbell, Nunn and Fitch were not in California Department of Corrections and

7   Rehabilitation ("CDCR") custody.  (Id. at 41.)  For that reason, these inmates were not called as

8   witnesses at the evidentiary hearing.

9         *Superior Court Decision*

10        Citing Wolff, the Superior Court acknowledged that inmates have a constitutional right to

11  call witnesses at disciplinary hearings where it would not be unduly hazardous to institutional

12  safety or correctional goals.  (ECF No. 12-6 at 5.)  In the order following the evidentiary hearing,

13  the Superior Court denied this claim for the reasons stated herein:

14              Cases and regulations provide that petitioner had a right to call
15              witnesses, and no party disputed that right.  Petitioner testified that
                he had inmate witnesses waiting outside the hearing office on a
16              bench and that he told Lt. Darnell about them and submitted
                questions for them.  Lt. Darnell testified that there were no inmate
17              witnesses waiting to testify and that petitioner did not point them
                out to him.  Nor did petitioner have questions to be asked of them.

18              Obviously, both parties cannot be right about what happened.  The
                court is persuaded by Lt. Darnell's testimony that he was not made
19              aware of any waiting witnesses.  Petitioner did not take the step of
                requesting witnesses ahead of time in writing.  He did not notify
20              Sgt. Stilwell, who was also the disciplinary officer in his unit, to
                collect the witnesses from their cells or other normal duties.
21
                Furthermore, none of the officers had any reason to deny witnesses.
22              Lt. Darnell's sole obligation, which he recognized, was to identify
                any witnesses, ask them any relevant questions that petitioner
23              presented, or to document the denial of any witnesses and the
                reasons for that denial.  Lt. Darnell testified that the only witnesses
24              that were mentioned to him were ones that petitioner wanted to seek
                but could not identify.  Lt. Darnell testified that if petitioner had
25              presented witnesses, even though he had not previously requested
                them, he would have sent an officer to bring the witness to the
26              hearing or, if he was in segregated housing, would have arranged to
                have the witness testify by phone.  The court finds Lt. Darnell
27              followed his usual practice regarding witnesses at hearings and that
                petitioner's due process rights were not violated by denial of
28              witnesses.

1    (ECF No. 12-6 at 11-12.)

2         *Analysis*

3         Under 28 U.S.C. § 2254(e)(1), findings of fact made by the state courts are entitled to a

4    presumption of correctness, which the petitioner has the burden of rebutting by clear and

5    convincing evidence.   Here, the Superior Court found that the testimony of SHO Darnell that

6    petitioner did not have four inmate witnesses present at the disciplinary hearing was more

7    credible than petitioner's testimony that his four inmate witnesses were present and willing to

8    testify.  The Superior Court also found impliedly credible Officer Stilwell's testimony that no

9    inmate witnesses were present, and impliedly rejected the credibility of inmate Robinson's

10   testimony that he was present at the disciplinary hearing.

11        Petitioner has failed to adduce any evidence, let alone the requisite clear and convincing

12   evidence, to rebut the Superior Court's credibility findings regarding whether petitioner's four

13   inmate witnesses were present at the disciplinary hearing and whether he specifically requested to

14   call these inmates as witnesses.  See, e.g., Marshall v. Lonberger, supra; Edwards v. Lamarque,

15   supra; Sophanthavong v. Palmateer, supra; Powell v. Collins, supra; Knaubert v. Goldsmith,

16   supra; Cooper, supra.

17        In his reply to the answer, petitioner argues that he has evidence demonstrating that he

18   requested the four inmate witnesses to testify and that they were present.  (ECF No. 13 at 11-12.)

19   Petitioner appears to cite to documents he allegedly received in response to a request for

20   documents from his central file that were part of the record of his disciplinary hearing.  (Id. at 46.)

21   According to petitioner, in response he received a list of questions addressed to inmate porters.

22   (Id. at 47.)  This list of questions is addressed to "Unit II Porters," and does not identify any

23   porters by name.  (Id.)  Petitioner argues that this list demonstrates that he requested the four

24   inmate witnesses at the disciplinary hearing and that they were present and willing to testify on

25   his behalf.

26        The undersigned does not find that the list of questions attached to petitioner's reply is

27   clear and convincing evidence that his four inmate witnesses were present at the disciplinary

28   hearing.  Most importantly, this list does not identify any of the inmate porters by name who

petitioner alleges were present at the disciplinary hearing.  It appears that this is the list of questions petitioner claims he gave to Officer Stilwell on September 6, 2010, to ask the inmate porters once Officer Stilwell discovered their identities.  (See ECF No. 13 at 51-53 (January 26, 2011 letter to Chief Disciplinary Officer referring to list of questions addressed to inmate porters petitioner claims he gave to Officer Stilwell).)  This list of questions is not clear and convincing evidence that the four inmate witnesses were present at petitioner's disciplinary hearing.

Accordingly, the undersigned finds that the denial of this claim by the Superior Court was not an unreasonable application of clearly established Supreme Court authority.  This claim should be denied.

D.  Continuance

Petitioner alleges that his request to continue the disciplinary hearing in order to locate and interview more inmate witnesses, i.e., in addition to the four inmate witnesses he claims were present at the hearing office, was wrongly denied.    The undersigned first summarizes the relevant testimony from the evidentiary hearing.

*Petitioner's Testimony*

Petitioner testified that after Officer Stilwell informed him that he did not qualify for an investigative employee on January 3, 2011, he contacted the unit sergeant, Sergeant Keener, and requested the names of the night shift inmate porters.  (ECF No. 12-6 at 24.)  Petitioner testified that Sergeant Keener gave him the names of the night shift porters.  (Id.)  The porters, inmates Robinson and Fitch, worked in the same unit as petitioner.  (Id.)

Petitioner testified that he heard rumors about another inmate, inmate Nunn, so he went and talked to him.  (Id. at 24-25.)  Inmate Nunn told him about other potential witnesses who were in petitioner's unit, so he talked to them.  (Id.)  From talking to these other inmates, petitioner learned about inmate Williams, who was housed in a different building.  (Id.)  Petitioner asked Sergeant Keener for permission to go the other building and talk to inmate Williams.  (Id.)  Sergeant Keener told petitioner that would be fine.  (Id.)  When petitioner went to the other building, the building officers for that building told petitioner that he would not be allowed access into that building.  (Id.)  Petitioner asked if they could look up inmate Williams'

1  CDC numbers so that petitioner could call him as a witness.  (Id.)  The officers told petitioner that

2  they would not give out any inmate information.  (Id.)

3       Petitioner testified that he returned to his unit and contacted Officer Stilwell.  (Id.)

4  Petitioner asked Officer Stilwell to escort him to the other building so that he could talk to inmate

5  Williams and another inmate named Evans.  (Id.)  Petitioner testified that he made the request to

6  Officer Stilwell on a written form, which Officer Stilwell signed.  (Id.)  When Officer Stilwell did

7  not take him to the other building after a few days, petitioner filed a grievance.  (Id.)  Petitioner

8  testified that he was never given access to the other building.  (Id.)

9       Petitioner testified that he had filed a request to postpone his hearing with the chief

10  disciplinary officer the day after he viewed the videotape.  (Id. at 28.)  Petitioner testified that he

11  received no response from the chief disciplinary officer to his request to postpone the hearing.

12  (Id. at 28-29.)  Petitioner testified that he wanted to postpone the hearing because, after viewing

13  the videotape, he was able to identify the inmate who shook his hand by his moniker.  (Id. at 29.)

14  Petitioner testified that someone told him that inmate's street name.  (Id.)  Petitioner testified that

15  he also saw two other inmates he knew in the videotape, so he wanted to have them as witnesses

16  also.  (Id.)

17       Petitioner alleges that he told SHO Darnell that he wanted to postpone the hearing because

18  he had witnesses in another building he had not been able to access and because Officer Stilwell

19  had not conducted any investigation.  (Id. at 29-30.)  Petitioner testified that SHO Darnell asked

20  him what his witnesses in the videotape would have testified to.  (Id. at 36.)  Petitioner testified

21  that SHO Darnell denied the request to postpone the hearing.  (Id. at 30.)

22       *SHO Darnell's Testimony*

23       At the evidentiary hearing, SHO Darnell testified that at the disciplinary hearing,

24  petitioner requested that the hearing be postponed because he needed to find witnesses.  (Id. at

25  44.)  SHO Darnell testified that petitioner told him that he had not found his witnesses and he did

26  not know what their testimony would be.  (Id. at 45.)  SHO Darnell testified that he conferred

27  with Officer Stilwell regarding petitioner's ability to locate witnesses before making a decision

28  regarding petitioner's request to postpone the disciplinary hearing.  (Id. at 44-45.)  SHO Darnell

1  testified that he had to verify that petitioner had the ability to gather witnesses on his own.  (Id. at

2  45.)  SHO Darnell testified that petitioner told him that after viewing the videotape, he had only

3  five days to get witnesses.  (Id. at 46.)

4      SHO Darnell testified that he denied petitioner's request to postpone the hearing because

5  after petitioner was released from ad seg to the general population in November 2010, he had 2

6  1/2 months to gather witnesses.  (Id. at 48.)  SHO Darnell testified that after viewing the

7  videotape, petitioner had five days to gather witnesses he had seen on the videotape.  (Id.)  SHO

8  Darnell testified that the standard amount of time to view evidence prior to a disciplinary hearing

9  is 24 hours.  (Id.)

10      SHO Darnell testified that petitioner told him that he sent a request to postpone the

11  disciplinary hearing to the chief disciplinary officer but received no response.  (Id. at 57.)

12      *Officer Stilwell's Testimony*

13      Officer Stilwell testified that he could not recall whether petitioner asked him for

14  assistance to make contact with potential inmate witnesses in another building.  (ECF No. 12-7 at

15  6.)  Officer Stilwell testified that if petitioner had made this request, Officer Stilwell would have

16  made a phone call because if petitioner had tried on his own to get into another building, he

17  would have been denied entry.  (Id.)

18      At the evidentiary hearing, Officer Stilwell was shown a copy of petitioner's written

19  request for access to the other building to interview potential witnesses.  (Id. at 7.)  Officer

20  Stilwell testified that the signature on it did not look like his signature.  (Id.)  Officer Stilwell

21  testified that petitioner's request for access to the other building was written on a Form 22 form.

22  (Id.)  Officer Stilwell testified that Form 22 is a form for simple requests.  (Id.)  Petitioner's

23  request to access another building was not a simple request.  (Id.)  Officer Stilwell testified that if

24  petitioner had presented this form to him, containing this request, he would not sign it.  (Id.)

25  Officer Stilwell testified that petitioner's request for access to another building was more of an

26  appeal issue.  (Id.)

27      Officer Stilwell testified that the form had specific names listed on it, i.e., apparently the

28  inmates petitioner wanted to talk to.  (Id. at 7-8.)  Officer Stilwell testified that at petitioner's

1  disciplinary hearing, petitioner did not identify any potential inmate witnesses by name.  (Id. at

2  8.)

3      *Superior Court Decision*

4      After the evidentiary hearing, the Superior Court denied this claim for the reasons stated

5  herein:

6      C.  Postponement.

7  "The charges shall be heard within 30 days from the date the inmate
8  is provided a classified copy of the CDC Form 115 unless the
   charges were referred for possible prosecution and the inmate has
9  been granted a request for postponement of the disciplinary
   proceedings pending the outcome of the referral, if exceptional
10 circumstances exist pursuant to section 3000, or the inmate is
   transferred out of the custody of the department."  (Title 15, Cal.
11 Code Regs., section 3320(b).)

12 "Exceptional Circumstances means circumstances beyond the
   control of the department or the inmate that prevent the inmate or
13 requested witnesses from participating in the disciplinary hearing
   within established time limitations.  Examples of this as applied to
14 an inmate would include a serious temporary mental or physical
   impairment verified in writing by a licensed clinical social worker,
15 licensed psychologist, psychiatrist, or physician.  Some examples of
   exceptional circumstances preventing staff witnesses, to include the
16 reporting employee, from attending the disciplinary hearing would
   be extended sick leave, bereavement leave, personal emergency, or
17 extended military duty.  Exceptional circumstances, as described
   above, would allow for suspension of time limitations pending
18 resolution of the instances."  (Title 15, Cal. Code Regs., section
   3000.)

19 "A hearing may be postponed up to 30 days upon receipt of the
   inmate's written request to the CDO (chief disciplinary officer)
20 showing a reasonable need for postponement.   The CDO will
   evaluate the request and approve or deny it based on its credibility.
21 Postponement shall not bar any credit forfeiture.  If a hearing is
   postponed for any reason, such reason shall be documented in the
22 findings of the CDC Form 115."  (Title 15, Cal. Code Regs.,
   section 3320(d)-(e).)

23 ****

24 4.  Denial of 30-day Continuance

25 Charges are usually heard within 30 days of the date the inmate is
   given notice of the disciplinary hearing.  (Title 15, Cal. Code Regs.
26 section 3320(b).)  A hearing cannot be held until an inmate has
   been notified of the charges and has had "[a]t least 24 hours to
27 review the material and prepare for the hearing."  (Ibid. at (c).)

28

25

1

2

3

4

> This case was referred to the district attorney, and the hearing was set within 30 days of the date that the district attorney declined to prosecute. An inmate may seek a 30 day postponement by filing a written request with the chief disciplinary officer. (Ibid. at (d)-(e).) The disciplinary officer must evaluate the request and approve or deny it based on its credibility.

5

6

7

8

9

> Here, petitioner had five days to seek witnesses, not 24 hours. He said he asked Lt. Stilwell to escort him to a different building so that he could find witnesses and that Lt. Stilwell never responded. Officer Stilwell stated that he did not recognize a signature on the form petitioner presented as being his. There was no testimony as to whether the signature was actually that of Officer Stilwell. The court cannot conclude that petitioner's wish to visit a different building to look for more witnesses was actually communicated to Officer Stilwell.

10

11

> Petitioner also stated that he filed a request for postponement with the chief disciplinary officer but heard nothing. Petitioner, however, did not keep a copy of his request.

12

13

14

15

> Finally, petitioner stated that he renewed his request for postponement with Lt. Darnell. The lieutenant testified that petitioner asked for a postponement to locate witnesses but that petitioner did not know the names of the witnesses or what they could testify to. There is no indication that petitioner gave a description of the witness or even what he hoped that a witness would be able to say.

16

17

18

> In these circumstances, it was reasonable for the hearing officer to ask whether the proposed witnesses were anything but wishful thinking. Because petitioner had no names and no proposed testimony, the hearing officer reasonably concluded that petitioner had not shown that he was entitled to a continuance.

19

(ECF No. 12-6 at 6-7, 12-13.)

20

21

22

23

24

Under 28 U.S.C. § 2254(e)(1), findings of fact made by the state courts are entitled to a presumption of correctness, which the petitioner has the burden of rebutting by clear and convincing evidence. Here, the Superior Court found, and petitioner does not dispute, that when he made his request to postpone the hearing to SHO Darnell, he stated that he did not know the names of the witnesses or what they would testify to.

25

26

27

28

While petitioner may have been able to locate inmate witnesses with testimony in his favor had his request to postpone the hearing been granted, SHO Darnell's refusal to postpone the hearing did not violate petitioner's right to due process under Wolff. Although an inmate has the right under Wolff to call witnesses, that right is limited by correctional and institutional concerns.

26

1  See Wolff, 418 U.S. at 566.  A legitimate correctional concern is the prompt resolution of

2  disciplinary charges.

3
>           Such promptness not only encourages the confidence and
>           cooperation of inmates by ensuring that they do not linger under the
4           specter of unresolved allegations and that they have the opportunity
>           to mount a defense before memories and witnesses fade, it also
5           places a premium on prison administrators' need to punish
>           troublemakers without undue delay. Thus, while Wolff sanctions
6           the presentation of evidence in an inmate's defense, it does not
>           require that inmates be given unlimited time to gather that evidence.
7

8  Palmer v. Salazar, 2011 WL 3046217 at *10 (N.D. Cal. 2011).

9       While petitioner claims that Officer Stilwell ignored his written request for access to the

10  other building to locate inmate witnesses, after the evidentiary hearing the Superior Court found

11  that it could not conclude that petitioner actually made this request to Officer Stilwell.  This

12  finding of fact is presumed correct, as it has not been rebutted by petitioner with clear and

13  convincing evidence.  Assuming petitioner communicated a request to access the other building

14  to a different officer, at the disciplinary hearing petitioner still did not identify any inmate

15  witnesses by name or describe their proposed testimony.

16       In addition, Officer Stilwell informed petitioner on January 3, 2011, that he no longer

17  qualified for an investigative employee.  Thus, petitioner had 27 days from January 3, 2011, until

18  the January 30, 2011 disciplinary hearing to locate witnesses and investigate his claims.

19  Petitioner also had five days after he viewed the videotape to locate witnesses he saw on the

20  videotape.  Based on these circumstances, as well as petitioner's failure to identify his witnesses

21  and their proposed testimony to Officer Darnell, the undersigned finds that the decision to deny

22  petitioner's request to postpone the disciplinary hearing did not violate petitioner's right to due

23  process.

24       As discussed in the section above addressing petitioner's claim alleging that he was

25  denied his right to an investigative employee, petitioner alleges that he, petitioner, did not start

26  investigating the charges against him until after Officer Stilwell informed him that he no longer

27  qualified for an investigative employee on January 3, 2011.  Petitioner testified that up until that

28  time, he believed Officer Stilwell was conducting an investigation.  At the evidentiary hearing,

27

1   Officer Stilwell did not specifically testify that he told petitioner that he would not investigate the

2   charges while the District Attorney reviewed the case, although this was his practice.  However,

3   for the reasons discussed above, even if petitioner had the mistaken impression that Officer

4   Stilwell was investigating the charges during the District Attorney's review, petitioner had

5   adequate time to locate witnesses.

6         The denial of this claim by the Superior Court was not an unreasonable application of

7   clearly established Supreme Court authority.  Accordingly, this claim should be denied.

8         E. <u>Staff Witnesses in Hearing Room</u>

9         Petitioner alleges that after he left the hearing room so that Officer Darnell could consider

10  his request to postpone the hearing, Officers Beams, Rhoads and Stilwell, and "several other

11  officers" remained in the hearing office.  (ECF No. 1 at 17.)  Petitioner alleges that when the

12  hearing was moved to the counselor's office, Officers Beams and Rhoads stayed in the room and

13  were questioned in front of each other.  (<u>Id.</u>)  Petitioner alleges that allowing the officers to stay

14  in the hearing room, when petitioner was not present, violated his right to due process.

15        After the evidentiary hearing, the Superior Court denied this claim for the following

16  reasons:

17              Petitioner said that there were occasions when Lt. Darnell and the
                officer witnesses were in the room together when he was not
18              present.  Lt. Darnell said that this did not occur.  Lt. Darnell had no
                reason to vary from his usual practice, which was to follow the
19              regulation that requires him to have petitioner present at all times.
                The court is persuaded by the officer's testimony that this was what
20              occurred in petitioner's hearing.

21  (ECF No. 12-6 at 13.)

22        Petitioner's claim that officers improperly stayed in the hearing room when petitioner was

23  not present does not raise a constitutional claim.  Instead, petitioner is alleging a violation of state

24  law.  Generally, issues of state law are not cognizable on federal habeas.  <u>Estelle v. McGuire</u>, 502

25  U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for

26  errors of state law'") (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).  Accordingly, this

27  claim should be denied on grounds that it is not cognizable in federal habeas.

28  ////

1    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of
2  habeas corpus be denied.
3    These findings and recommendations are submitted to the United States District Judge
4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
5  after being served with these findings and recommendations, any party may file written
6  objections with the court and serve a copy on all parties.  Such a document should be captioned
7  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,
8  he shall also address whether a certificate of appealability should issue and, if so, why and as to
9  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the
10  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §
11  2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after
12  service of the objections.  The parties are advised that failure to file objections within the
13  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
14  F.2d 1153 (9th Cir. 1991).
15  Dated:  June 28, 2016
16
17  KENDALL J. NEWMAN
18  UNITED STATES MAGISTRATE JUDGE
19
20  Cole857.157
21
22
23
24
25
26
27
28